Totten, J.,
delivered the opinion of the court.
Bill for divorce. These parties were married March 30th, 1852, and separated a few months afterwards. Each of them had been married before, and had children by their former marriages. They had, perhaps, nearly an equal amount of property: The plaintiff owned an interest in some lands, owned six negro slaves, and other personal property. The bill avers, that defendant agreed before the marriage, to settle the plaintiff’s property to her separate use during her life, remainder to her children by her former and the present marriage. A written contract drawn by himself and executed on the day of marriage, fails to accomplish this object, but in effect secures her property to the defendant.
The grounds assumed for the divorce are, that the defendant was guilty of “ such conduct towards the plaintiff, as renders it unsafe and improper for her to cohabit with him, and bo under his dominion and control; and of such indignities offered to her person, as to render her condition intolerable, and force her to withdraw.” Act 1835, ch. 26, § 19. 1842, ch. 133, § 1.
*498 The plaintiff avers that the defendant’s conduct towards her and his family was passionate and brutal: That at times he seemed to be in a rage, and threatened her. On one occasion he whipped, his daughter, who was grown, severely, and for little cause, and then gave her an emetic, declaring that he “ would puke the devil out of' her:” That the plaintiff was compelled to be present to witness the scene. That after this, he threatened to inflict the same treatment on the plaintiff; and said she was deranged.
In an amended bill, the plaintiff avers that the defendant, with a view to degrade and disgrace her, “was going about the country stating that the plaintiff was not a yirtuous woman.”
All these charges are denied by the defendant in his answer, except that he admitted he struck his daughter with a switch, for good cause, and gave her an emetic, she being unwell. He denies explicitly and distinctly that he ever impugned the virtue of his wife, or ever doubted it; and admits his entire confidence in her conjugal fidelity.
How, it appears in the testimony of a number of witnesses, whose credit is not denied, that the defendant, on various occasions, slandei*ed and traduced the virtue of his wife. This denial of the answer is fully disproved, and therefore, the answer in other respects, stands discredited/
He said “it was very suspicious for his wife to be riding behind a black man at a dead hour of the night,” meaning Mr. Bass, who was married to her mother.
To another witness he said, “her character is as *499 spotted as a leopard: I don’t say it myself, other people do.” To another witness he expressed his be-, lief that an improper intimacy existed between Dr. M. and the plaintiff before the marriage.
On various occasions he said his wife was either deranged, or was not a virtuous woman.
“He threatened, under proviso’s, to .take her home by violence, and imprison her; and so, many of his threats were made under artful and Jesuitical conditions.”
As to the other averments in the bill before recited, they are not so fully established.
The denials of the answer, however, weigh nothing; it being fully discredited as we have seen, in other material facts, by a number of witnesses,, whose testimony is perfectly conclusive against it.
The defendant has proved the statement of the plaintiff, in the course of which she had reiterated these charges. Other facts and circumstances tend to confirm the truth of her statements. We incline to think, that the charges we have extracted from the bill as to the defendant’s conduct towards the plaintiff, before the separation, are substantially true.
Upon the whole, we think the plaintiff is entitled to be relieved from her unhappy connexion with the defendant, upon grounds assumed in the bill.
He commences by perpetrating a fraud upon her property even before the marriage, and afterwards stated that he had “fixed it” as he desired. Then he complains at the amount of her indebtment, it being a thousand, instead of two hundred, the sum he said, she had represented. Then he alarms her at home,, treats her with indignity, and threatens to practice upon *500 her in the cruel manner, as she believed, he had done with his daughter. Then he slanders and traduces her reputation as a chaste and virtuous woman. It is true, the defendant abounds in expressions of affection and kindness for the plaintiff, and a strong desire that she return to his home, and continue in the relation of his wife.
It is to be apprehended, however, from several passages in the proof,* that these sentiments are inspired by an anxious desire to retain his right and possession of the plaintiff’s property.
In view of the defendant’s conduct, and his imputations against the chastity of his wife, it is incredible that these professions can be true.
The decree of the chancellor dismissing the bill, will be reversed: and we decree for the plaintiff a divorce a vinculo, and that her property and effects be restored -to her by the defendant.
Decree reversed.